## IN THE HAMILTON COUNTY COMMON PLEAS COURT
## HAMILTON COUNTY, OHIO

Thomas Blumer
7753 Cox Lane
West Chester, OH 45069

         Plaintiff

-vs-

United Financial Network, LLC
  dba Sparks Lending/Horizons Lending
115 West 27th Street, 7th Floor
New York, NY 10001

Second address for service:
158 West 27th Street, 11th Floor
New York, NY 10001

and,

Five Lakes Law Group, PLLC.
c/o Statutory Agent
The Corporation Company
40600 Ann Arbor Road
East Plymouth, Michigan 48170

         Defendants.

CASE NO.

JUDGE:

## COMPLAINT AND REQUEST FOR DECLARATORY RELIEF AND JURY DEMAND

Plaintiff Thomas Blumer states the following claims for relief:

### Introduction

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. Section 1681b(f) regulates the access and use of consumer reports in order to protect consumer privacy. This case involves the illegal use of and access to the private financial data in the consumer reports of likely tens of thousands of financially distressed consumers. The information was accessed for the illegal purpose of

marketing debt settlement and/or consolidation services. Defendants obtained lists of consumer data, lists referred to as "pre-screened lists," including Plaintiff's. Defendants used the lists to market debt settlement services.

The pre-screened lists at issue are compiled by a consumer reporting agency using filters including a base level of unsecured debt balances, a minimum level of unsecured trade lines, and various other filters bearing on a consumer's credit worthiness. The pre-screened lists constitute consumer reports that may only be accessed and used for a permissible purpose. *See*, 15 U.S. C. Section 1681b(f); *See*, *Trans Union v FTC*, 245 F.3d 809 (U.S. App. D.C. 2001).

The pre-screened lists at issue are compiled by a consumer reporting agency using filters including a base level of unsecured debt balances, a minimum level of unsecured trade lines, and various other filters bearing on a consumer's credit worthiness. The pre-screened lists constitute consumer reports that may only be accessed and used for a permissible purpose. *See*, 15 U.S. C. Section 1681b(f); *See*, *Trans Union v FTC*, 245 F.3d 809 (U.S. App. D.C. 2001).

Accordingly, Plaintiff THOMAS BLUMER brings this action to obtain monetary damages, injunctive relief, attorneys' fees, his costs in this action and any other relief to which he may be entitled to compensate his for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §§1681, et seq., ("FCRA") the Ohio Consumer Sales Practices Act, Oh. Rev. Code §§1345.01 to 1345.99 ("OCSPA"), the Equal Credit Opportunity Act, 15 U.S.C §1691 ("ECOA"), fraud, and civil conspiracy all of which were violated as part of a venture to advertise, promote and operate a business of soliciting clients for debt settlement and credit repair.

### Jurisdiction and Venue

1. This Court has venue to hear this case pursuant to Ohio Civ. R. 3(B)(3), in that some of the transactions complained of, and out of which this action arose, occurred in Hamilton County, Ohio,

where Plaintiff resides.

2. The transactions and occurrences which give rise to this action occurred in Hamilton County, Ohio.

3. Venue is proper in the Hamilton County Common Pleas Court.

4. Defendants regularly engage in business with, and direct business at, Ohio consumers and have otherwise availed themselves of the Ohio marketplace and secured the benefits of that marketplace. Such conduct includes, among other things, holding themselves out as debt settlement and credit repair companies providing services to Ohio residents; directing business solicitations into the State of Ohio, directed at indebted Ohio residents; seeking participation in Defendants' debt settlement and credit repair programs; contracting in Ohio with Ohio consumers for various services including debt settlement and credit repair; offering to perform and/or performing activities for Ohio residents including debt settlement and credit repair functions.

5. Specifically, all Defendants had actual knowledge or acted with reckless disregard as to the deceptive nature of the mailing, the illegal nature of the data used in the mailing campaign at issue, that a portion of the mailers were directed to Ohio consumers (including Exhibit A).

6. All Defendants, acting in concert, conspired to illegally obtain protected consumer reporting data and mail to tens of thousands of Ohioans the illegal solicitations at issue in this Complaint, or substantially similar solicitations.

7. All Defendants intentionally targeted thousands of Ohioans at their residential addresses located in the State of Ohio and knew their conduct would injure these consumers in the State of Ohio.

8. Each Defendant played a significant and necessary role in the conspiracy described in this Complaint.

9. This Court has jurisdiction over the parties and the subject matter of this action.

10. For the purposes of this Complaint, unless otherwise indicated, "Defendant" or "Defendants" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named in this caption.

11. Defendants, acting in concert with each other, unlawfully obtained Blumer's consumer report and used it to illegally obtain information for the purpose of sending deceptive solicitations for debt adjustment/debt settlement and credit repair services. Defendants have misused the illegally obtained data of Plaintiff as well as likely tens of thousands of Ohioans.

12. As such, Plaintiff seeks damages for the harm caused by Defendants' unlawful acts and a declaration that Defendants have acted unlawfully.

## Statement of Facts

13. All named Defendants engaged in a scheme to obtain and use protected consumer reporting data to market debt settlement and credit repair services via mailers directed to Hankins in the State of Ohio.

14. To that end, Defendants United Financial Network, LLC, dba Sparks Lending/Horizons Lending ("Sparks") and Five Lakes Law Group, PLLC ("Five Lakes") in a joint venture, obtained a "pre-screened list" containing the names and addresses of consumers in financial distress from Equifax, Experian or TransUnion, consumer reporting agencies as defined by the Fair Credit Reporting Act.

15. Defendants obtained and used these pre-screened lists containing the names and addresses of consumers who met certain criteria such as minimum debt balances or high interest rates, etc.; Blumer was on at least one of these lists.

16. These lists are compiled by a consumer reporting agency using the filters supplied to the consumer reporting agency by Defendants. While Sparks represented in its mailer that it was offering Blumer a loan, Sparks never intended to honor this offer and was in fact marketing on behalf of Five Lakes (A law firm sending direct solicitations to retain Ohio clients).

17. Five Lakes is a debt settlement company/law firm and cannot provide loans to consumers such as Blumer.

18. Five Lakes engages in a debt settlement model that has come to be known as the "attorney model." Debt settlement companies believe that if the debt settlement is being performed by a law firm, the companies do not have to comply with various state laws designed to regulate debt settlement companies.

19. The lists used to market the "attorney model" debt settlement scheme constitutes consumer reports under the FCRA.

20. Sparks/Five Lakes then arranged for the preparation and mass mailing of marketing letters to the consumers on the pre-screened lists obtained from the consumer reporting agency for the benefit of all Defendants.

21. Blumer received one of the mailed solicitations, which is attached as Exhibit A and incorporated herein.

22. Defendants' representations on the mailer, and during the debt settlement pitch in response to the mailer provides proof the mailer was populated with data from a consumer report. Some of the relevant language is as follows:

    (a) The front of the mailer indicates, in bold print, "**You have been pre-selected for a debt consolidation loan up to $51,000.00** that can be used to pay your debt at a much LOWER FIXED RATE."

(b) The front of the mailer also indicates, "Get started today by simply calling Sparks Lending at 800-756-0862. Don't wait! Interest rates are on the rise, and you could miss this opportunity. **We are willing to extend this offer to you until 7/27/2023.**"

(c) The front of the mailer also has a copy of a "check" in the amount of $51,000.00 written to Blumer from the "CASH DISBURSEMENTS DEPARTMENT."

(d) The back of the mailer indicates, "You received this offer because you meet the Sparks Lending initial credit worthiness criteria. If you application information differs from the information used during our pre-selection or you are unable to meet our full credit eligibility criteria, we may not be able to approve your application."

23. On or about October 18, 2023, Blumer called the phone number listed on the mailed solicitation to accept the purported firm offer of credit.

24. Blumer initially spoke with a woman who asked him four questions regarding his income and general debt level, etc. The woman then transferred Blumer to Louis Bradley ("Bradley").

25. Bradley requested permission to perform a soft credit pull and indicated he would call back in 15 minutes after an initial review by "underwriting".

26. Bradley called Blumer back from the phone number 646-517-4184 and indicated a loan was "out of the question". Bradley then indicated he had another option, i.e., "debt restructuring".

27. Bradley sent Blumer a 28-page Debt Resolution Retainer Agreement from Five Lakes.

28. Blumer was required to electronically Docusign the Retainer Agreement to proceed to the next step in the process.

29. Sparks and Five Lakes partnered to advertise a consolidation loan through a direct marketing campaign to entice Blumer to call on the solicitation, but instead marketed debt adjustment or debt settlement products and services on behalf of, and for the benefit of Five Lakes.

This is the classic and illegal "bait and switch" method of marketing and violates the Ohio Consumer Sales Practices Act.

30. Sparks never intended to offer a loan to Blumer. The solicitation itself was a guise to obtain a targeted list from a consumer reporting agency as it is unlawful to obtain consumer reports for the purpose of marketing debt settlement services of Five Lakes.

31. Sparks could not legally lend Blumer money as advertised in the purported firm offer of credit as it does not have a lending licenses in Ohio that would permit it to do so.

32. In the mailer, Sparks indicates Blumer is approved for a $51,000.00 loan. The back of the mailer indicates Blumer may not qualify for a $51,000.00 loan. However, the FCRA defines a "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." Defendants' mailer did not meet the definition of a "firm offer of credit" in that Sparks does not actually lend money or broker loans. None of the Defendants could have possibly honored the fake offer as represented in the Sparks mailer.

33. It is unlikely that Defendants made any attempt to obtain a loan on behalf of Blumer as Blumer did not receive any notifications from any lenders, including but not limited to, an adverse action letter.

34. All Defendants are necessary components of this conspiracy – Sparks obtained the pre-screened lists from Experian, Equifax or Transunion and arranged for the mailing campaign, Five Lakes is the actual end user of the data for Ohio consumers on the list.

35. While Sparks pretends to be the lender, the relationship between Five Lakes, a purported law firm, is the "attorney model" employed by many debt settlement companies throughout the

country. The "attorney model" is simply a scheme to attempt to avoid state and federal laws pertaining to debt settlement companies.

36. Sparks, knew, when it partnered with Five Lakes, that the prescreened lists it obtained from consumer reporting agencies would be used to market debt settlement on behalf of and for the benefit of Five Lakes, and not to make a firm offer of credit. Five Lakes likewise had full knowledge of this scheme as well and were willing co-conspirators motivated at obtaining new debt settlement clients, and in turn, larger profits.

37. All Defendants knew, or should have known, that the data used in the marketing originated at a consumer reporting agency.

38. All Defendants share, in some percentage, the fees paid by Ohio consumers.

39. All Defendants knew the solicitation, as it exists and as it is described by Sparks, was not a firm offer of credit, and that Defendants did not have the intent to honor the loan terms as offered in the mailer.

40. The entire scheme is designed to impermissibly access Blumer's private consumer reporting data because all Defendants know this targeted and direct marketing is extraordinarily profitable.

41. Blumer was mortified when he learned that his most private financial data had been invaded by companies working within an industry that is widely known for unscrupulous business practices, including but not limited to, taking money from consumers without performing the promised services.

42. Obtaining and using a consumer report for marketing is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

43. Plaintiff did not authorize Defendants to access his consumer report information prior to the mailer being sent to him.

44. Defendants are responsible for any of the actions of its agents under the doctrine of *respondeat superior*.

## COUNT ONE
## Violation of the Fair Credit Reporting Act
## Willful Noncompliance, 15 U.S.C. § 1681n

45. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

46. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

47. Defendants, alone or through a marketing agent, obtained information and data on Plaintiff's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living from a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. §1681a(f).

48. The marketing agent then disclosed Plaintiff's most private consumer reporting data to Defendants in order to use in Defendants' marketing campaign.

49. All Defendants illegally accessed Plaintiff's consumer report for the purposes of marketing a debt settlement program, and all Defendants knew Blumer, and any reasonable person, would be harmed by this invasion of privacy.

50. The information is therefore a "consumer report" as defined by the FCRA, 15 U.S.C. §1681a(d).

51. Defendants willfully obtained and used Plaintiff's consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681n.

52. Defendants willfully obtained and used Plaintiff's consumer reports to utilize the information for marketing debt settlement services. Under section 607 of the Fair Credit Reporting

Act, it is clearly stated that the purpose for which a consumer report is sought must be certified, and that it must be further certified that the information will be used for no other purpose 15 U.S.C. § 1681e.

53. Obtaining and using a consumer report for marketing is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

54. Due to Defendants' conduct, Plaintiff has suffered actual damages by Defendants' invasion of his privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages and embarrassment upon learning that his most private financial data had been accessed and reviewed by companies and individuals that had no right to such information.

## COUNT TWO
### Violation of the Fair Credit Reporting Act
### Negligent Noncompliance, 15 U.S.C. § 1681o

55. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

56. Defendants negligently obtained and used Plaintiff's consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

57. The information obtained is a "consumer report" as defined by the FCRA, 15 U.S.C. §1681a(d).

58. Defendants negligently obtained and used Plaintiff's consumer report without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

59. Due to Defendants' conduct, Plaintiff has suffered actual damages by Defendants' invasion of his privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages, and embarrassment upon learning that his most private financial data had been accessed and reviewed by companies and individuals that had no

right to such information.

## COUNT THREE
### Violation of the Fair Credit Reporting Act
### False Pretenses--15 U.S.C. § 1681q

60. Plaintiff repeats, realleges, and incorporates by reference, as though set forth herein, the prior paragraphs of this Complaint.

61. Defendants accessed Plaintiff's consumer reports under false pretenses.

62. Defendants violated the FCRA by knowingly and willfully procuring information on Plaintiff under false pretenses, 15 U.S.C. § 1681q.

63. 15 U.S.C. § 1681q has a private cause of action under 15 U.S.C. § 1681n.

64. All Defendants acted knowingly and willfully. Defendants' willful conduct is illustrated by the following:

    (a) The FCRA was enacted in 1970; Defendants have had over 50 years to become compliant;

    (b) Defendants violated a clear statutory mandate set forth in 15 U.S.C. § 1681q;

    (c) All Defendants knew that they had no intention of, making a firm offer of credit. Similarly, the individual Defendants knew the consumers responding to the mailers had no business relationship with Defendants, were not being offered a credit transaction, but instead were being offered debt settlement services.

    (d) Defendants systematically procured consumer information without permissible purposes despite myriad statutory text and guidance.

    (e) By adopting such a policy and practice, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

65. Plaintiff is entitled to Statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff is also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff is further entitled to recover his costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT FOUR
### Violations of the Ohio Consumer Sales Practices Act

66. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

67. The interactions between Plaintiff and Defendants were a "consumer transaction" as defined by R.C. § 1345.01(A) as Defendants solicited a service to Plaintiff, an individual, for purposes that are primarily personal, family or household. Defendants did this by mailing Plaintiff a solicitation to procure their business. The purpose of the mailed solicitation was personal in nature and Defendants solicited Plaintiff to provide him services for his personal debt in exchange for various fees.

68. The mailers sent to Plaintiff as well as the ensuing telephone sales pitch for debt settlement services were riddled with deceptive and fraudulent representations.

69. Defendants are "suppliers" as defined by R.C. § 1345.01(C) as it engaged Plaintiff in the soliciting of a consumer transaction by attempting to procure Plaintiff's business by sending him mailed solicitations in an attempt to provide Plaintiff with debt adjustment/debt settlement services in exchange for various fees.

70. Plaintiff is a "consumer" as defined by R.C. § 1345.01(D) as he engaged in consumer transactions with Defendants, a supplier. Defendants solicited Plaintiff via the mailer attached as Exhibit A to this Complaint and invited him to call.

71. All parties are a "person" as defined by R.C. §1345.01. A person includes an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative, or other legal entity. Plaintiff is a person and Defendants, a legal entity, is also a person.

72. Defendants committed material unfair, deceptive, and/or unconscionable acts and practices in connection with a consumer transaction, primarily for personal, family or household purposes, in violation of the Ohio Consumer Sales Practices Act, including, but not limited to:

   (a) Making false or misleading statements to induce a purchaser to pay for services in violation of R.C. § 1345.02(A).

   (b) Knowing of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

   (c) Using a sales presentation which makes the material facts of the offer misleading or conveys or permits an erroneous impression as to the services offered for sale.

   (d) Defendants violated O.A.C. 109:4-3-03(B)(2) and engaged in deceptive acts or practices in connection with a consumer transaction because the first contact it had with Blumer was secured by through deception when Defendants sent a misleading letter to Plaintiff.

   (e) Defendants violated O.A.C. 109:4-3-10(A) and engaged in deceptive acts or practices in connection with a consumer transaction because Defendants made representations, claims, or assertions of fact about the status of Plaintiff's debt balances, monthly payments, interest rates and high balance revolving debt in an effort to convince a reasonable consumer to call immediately and retain Defendants' services.

73. Plaintiff was in fact deceived by the alleged violations and as a result of the preceding violations by Defendants, Plaintiff has suffered injury in the form of mental and emotional hardship, physical, mental and emotional stress, anxiety, embarrassment and monetary damages caused by the deceptions in the mailers previously described in this Complaint.

## COUNT FIVE
### Fraud

74. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

75. Fraudulent conduct has been specifically alleged throughout this Complaint and incorporated into Count Five by reference. Plaintiff specifically relied on the aforementioned representations, misrepresentations, non-disclosures and implied representations when making the determination whether to contact Sparks and provide Sparks and its coconspirator(s) with access to his consumer reports and other private financial data.

76. The Defendants' entire scheme is to mislead. It misled the consumer reporting agency by obtaining protected FCRA data under false pretense, and it misled Blumer by tricking him into calling and disclosing additional data under the false pretense of offering a consolidation loan.

77. Specifically, Blumer relied on all representations in Exhibit A in deciding to call Sparks. These representations include, but are not limited to, the fact that he was invited to apply for a consolidation loan, when, in fact, Defendants were only interested in marketing debt settlement services.

78. The Defendants' representations concerning the work it claimed it would perform were made falsely, with knowledge of their falsity, or with such utter disregard and recklessness as to whether the representations were true or false that knowledge may be inferred.

79. The representations were made with the intent of misleading Plaintiff into relying upon them so Defendants could obtain money from Plaintiff, as well as access to his consumer report.

80. Plaintiff was justified in relying upon the Defendants' representations. Plaintiff has been injured by the wrongful and fraudulent conduct of Defendants and has been damaged in an amount to be established at trial, as well as entitled to punitive damages in an amount to be established at trial.

## COUNT SIX
## Civil Conspiracy

81. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

82. Sparks conspired with Five Lakes to illegally obtain, and use data protected by the FCRA. The Defendants committed further crimes when they conspired to use the illegal data in a deceptive fashion. All Defendants knew the marketing scheme was both criminally and civilly illegal and they were joint actors and conspirators in the illegal marketing scheme.

83. The combined acts of Defendants have resulted in damages to Plaintiff in the form of an invasion of privacy and the emotional damages resulting from such an invasion.

84. The combination of Defendants' actions and conduct as alleged herein constitute a civil conspiracy by way of an unlawful act independent of the conspiracy, namely fraud and the criminally illegal acts in violation of both the FCRA and the OCSPA resulting in an invasion of privacy.

## COUNT SEVEN
## Violations of the Equal Credit Opportunity Act

85. While Plaintiff does not believe Defendants intended to offer a loan, should Defendants demonstrate they did make a firm offer of credit that was then denied for permissible reasons as outlined in the FCRA, then it violated the Equal Credit Opportunity Act.

86. Defendants are a "creditor" as defined in 15 U.S.C. § 1691a(e) as it extended credit to Blumer via mail; Defendants regularly extend credit and make credit decisions, including rejecting

customer credit applications.

87. Blumer is an "applicant" as defined in 15 U.S.C. § 1691a(e) as he applied directly to Sparks and Five Lakes via telephone following the pre-approved offer that arrived in the mail.

88. Sparks failed to issue an adverse action notice following the denial of credit to Blumer within 30 days of the denial as stated in Reg. B 12 C.F.R.§ 202.9(a)(1)(i).

89. The foregoing acts and omissions of Defendants constitute a violation of the ECOA.

90. As a result of Defendants' violation of 15 U.S.C §1691 *et seq.*, Blumer is entitled to an award of up to $10,000.00 in punitive damages for each violation pursuant to 15 U.S.C §1691.

91. Blumer is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## Prayer for Relief

ACCORDINGLY, Mr. Blumer requests this Court grant any or all of the following relief:

    a. Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.

    b. Statutory damages in an amount to be determined at trial.

    c. Punitive damages in an amount to be determined at trial.

    d. Costs and attorney fees as provided by statute.

    e. Declaratory and injunctive relief as appropriate.

    f. Any other relief the Court deems just.

Respectfully submitted:

*/s/ Brian M. Garvine*
Brian M. Garvine (0068422)
LAW OFFICE OF BRIAN M. GARVINE, LLC
533 South Third Street
Columbus, Ohio 43215
Tel: (614) 223-0290; Fax: (614) 732-0043
Email: brian@garvinelaw.com
*Attorney for Plaintiff*

/s/ *Jeremiah E. Heck (per consent)*
Jeremiah E. Heck, 0076742
Luftman, Heck & Associates, LLP
6253 Riverside Drive, Suite 200
Dublin, Ohio 43017
(614) 224-1500-Phone
(614) 224-2894-Facsimile
JHeck@lawlh.com
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, Thomas Blumer, demands trial by jury in this action.

*/s/ Brian M. Garvine*
Brian M. Garvine, 0068422

Consumer: Thomas Blumer
Your Invitation Code: EXP07ZCEYY
Offer Date: 6/22/2023

# 800-756-0862

## CONGRATULATIONS!
You have been pre-selected for a $51,000 Debt Consolidation Loan

Dear Thomas,

In these uncertain times, Sparks Lending is here to offer you a solution to the high-interest debt you have been burdened with. You have been pre-selected for a Debt Consolidation Loan up to $51,000 that can be used to pay your debt at a much LOWER FIXED RATE.

Get started today by simply calling Sparks Lending at 800-756-0862. Don't wait! Interest rates are on the rise, and you could miss this opportunity. We are willing to extend this offer to you until 7/27/2023.

You can even get SAME DAY APPROVAL. Use these savings to improve your quality of life. There is no obligation. Call 800-756-0862 now and mention your invitation code EXP07ZCEYY, or apply online. See instructions below.

| | CURRENT | NEW |
|---|---|---|
| | Credit Card Balance $41,000 | Consolidation Loan $51,000 |
| | Average Interest Rate 19.9% | New Interest Rate 3.09% |
| | | You qualify for an added $10,000 |
| | Existing Minimum Payment $1,230 | New Minimum Payment $281 |
| | Fixed monthly savings $950 | First year you save $11,394 |


SPARKS LENDING

- One low FIXED monthly payment
- Rate as low as 3.09%
- FREE Consultation
- NO upfront fees

Offer Expires: 7/27/2023
Your Invitation Code: EXP07ZCEYY

Monday to Friday: 8AM – 10PM EST
Saturday: 9AM – 10PM EST

Call 800-756-0862
Or apply online anytime by visiting your personalized website
mysparkslending.com/Thomas-Blumer



SCAN ME

DOCUMENT HAS A COLORED BACKGROUND, SECURITY FEATURES LISTED ON BACK

## CASH DISBURSEMENTS DEPARTMENT

Your Invitation Code: EXP07ZCEYY

$51,000

PAY UP TO: Fifty One Thousand Dollars and No Cents**********

TO THE ORDER OF
Thomas Blumer    54 29432
7753 Cox Ln
West Chester, OH 45069-6549

*L. Thomas*
Authorized Signature


EXHIBIT A

**CONSOLIDATE TODAY AND SAVE! CALL 800-756-0862**

TO BE OPENED ONLY BY ADDRESSEE. DO NOT DISCARD.

FINAL ATTEMPT – EXPIRES ON 7/27/2023

TIME SENSITIVE

← To Open This Side – Slide Finger Under This Edge

**No Fees. No**
No origination
money on your

**Easy Experi**
Simple applicat
What you see is

**Start Saving**
Consolidate bill
Get back on trac

**Why Sparks**

By contacting S
contact informa
agreeing to allo
party affiliates
electronic mail,
forms of media
would like to op
please call us at

**Pre-selecte**
You received th
Sparks Lending
If your applicat
information use
are unable to n
we may not be a

Annual percent
Lending range
APR for first-ti
for the most cre

PRESORTED
STANDARD
U.S. POSTAGE
PAID
PERMIT NO. 190